## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA
_____

CARDIOVENTION, INC.,
a Delaware corporation,

        Plaintiff,


v.                           **MEMORANDUM OF LAW**
                               Civil File No. 04-2669 (MJD/AJB)

MEDTRONIC, INC.,
a Minnesota corporation,

        Defendant.
_____

Courtland C. Merrill, Joseph W. Anthony, Richard T. Ostlund, and Norman J. Baer, Anthony Ostlund & Baer, Counsel for Plaintiff.

Alain M. Baudry, Haley N. Schaffer, Mary R. Vasaly, William Z. Pentelovitch, and Emily M. Rome, Maslon Edelman Borman & Brand, LLP, and David R. Fairbairn, Kinney & Lange, PA, Counsel for Defendant.
_____


## I.    INTRODUCTION

This matter is before the Court on fifteen motions in limine.  Trial is scheduled to begin on March 19, 2007.  The Court heard oral argument on March 16, 2007.  Also on that date, the Court issued its Order ruling on those motions and dismissing Count III, Unfair Competition.  The Court's March 16, 2007, Order stated that a Memorandum of Law explaining its decisions would follow.

1

Accordingly, the Court issues the following Memorandum of Law.

## II.   CHOICE OF LAW

The Confidential Disclosure Agreement ("CDA") between Medtronic and CardioVention provides that the "Agreement shall be governed by the laws of the State of California." (CDA ¶ 8.) As to CardioVention's misappropriation of trade secrets claim, the parties agree that there is no discernible difference between California and Minnesota law, as both states have adopted the Uniform Trade Secret Act. The Court includes both states' laws in analyzing the misappropriation claim.

## III.   DISCUSSION

### A.   Count III: Unfair Competition

In its Statement of the Case, Medtronic attacks the validity of Count III, Unfair Competition. At oral argument, CardioVention represented that it is not asserting a claim for unfair competition under the California statute, Cal. Bus. & Prof. Code § 17200. Instead, it only asserts common law unfair competition. Thus, the Court must examine the validity of CardioVention's common law unfair competition claim under California and Minnesota law.

"[U]nder Minnesota law, [u]nfair competition is not a tort with specific

elements, but rather, it describes a general category of torts which courts recognize for the protection of commercial interests." <u>LensCrafters, Inc. v. Vision World, Inc.</u>, 943 F. Supp. 1481, 1490 (D. Minn. 1996) (citation omitted).  "[A] common law unfair competition claim must identify the underlying tort which is the basis for [the claim].  Moreover, if the underlying tort is duplicative of another Count of the Complaint, the claim for unfair competition cannot stand." <u>Id.</u> (citation omitted).  CardioVention bases its unfair competition claim on the other tort claims in the Complaint, and thus, it must be dismissed as duplicative.

CardioVention asserts that there is no difference between Minnesota and California law on unfair competition.  Under this reasoning, the unfair competition claim under California common law cannot survive.  Moreover, "[t]he [California] common law tort of unfair competition is generally thought to be synonymous with the act of 'passing off' one's goods as those of another and requires a showing of competitive injury." <u>Smith & Hawken, Ltd. v. Gardendance, Inc.</u>, No. C04-1664 SBA, 2004 WL 2496163, at *3 n.1 (N.D. Cal. Nov. 5, 2004) (unpublished) (citation omitted).  There is no assertion that Medtronic passed off its goods as those of CardioVention.  To the extent that a California common law unfair competition claim could be based on misappropriation, that claim is duplicative of CardioVention's misappropriation of trade secrets claim and, as under Minnesota law, must be dismissed.

For these reasons, the Court dismisses Count III, Unfair Competition.

**B.      Plaintiff CardioVention's Motions in Limine**

### 1.      Motion in Limine to Exclude Evidence or Argument about Its Public Disclosure of Information after Medtronic's Misappropriation [Docket No. 300]

CardioVention argues that the Court should exclude evidence that CardioVention publicly disclosed evidence about CORx in 2002 and 2003, after Medtronic allegedly started misappropriating its trade secrets.

CardioVention is correct that information that become publicly available after the time of the misappropriation is irrelevant to the existence of a trade secret at the time of the misappropriation.  B. Braun Med., Inc. v. Rogers, 163 Fed. Appx. 500, 505-06 (9th Cir. 2006) (unpublished) (holding that, under California law, "[t]he state of industrial knowledge *after* the alleged misappropriation is irrelevant to determining whether a trade secret existed *at the time* of the alleged misappropriation.").  However, the parties do not agree on when Medtronic allegedly used CardioVention's information in a manner prohibited by the parties' agreement, so evidence of CardioVention's disclosures after 2001 may be relevant to the determination of whether the information constituted a trade secret at the time of the use.  See Stutz Motor Car of Am., Inc. v. Reebok Int'l, Ltd., 909 F. Supp. 1353, 1359 (C.D. Cal. 1995) ("[I]t is clear that an unprotected disclosure of the holder's secret terminates the existence of the trade secret.") (citations

omitted), aff'd Nos. 96-1062, 96-1083, 1997 WL 258883 (Fed Cir. May 16, 1997) (unpublished).  Additionally, the parties' CDA exempts Medtronic from having to maintain as confidential "any information that is or becomes generally available to the public through no fault of Medtronic."  (CDA ¶ 3(a).)

During the jury instruction charge conference, the parties can argue how best to instruct the jury regarding public disclosures occurring after misappropriation.

### 2.      Motion in Limine to Exclude Evidence or Argument About Its Shareholders [Docket No. 302]

CardioVention seeks to bar evidence that its shareholders are "owners" of this action because they are funding this litigation; about the shareholders' financial condition; and that its shareholders should have invested additional funds into CardioVention to mitigate the damages caused by Medtronic.

At CardioVention's request, the Court will instruct the jury that CardioVention, not its shareholders, owns this litigation.  See United States v. Sain, 141 F.3d 463, 474 (3d Cir. 1998) ("[A corporation] is a separate legal entity, with an existence independent of individuals who compose it.  A corporation is not in reality a person, but the law regards it as distinct and separate from the individual stockholders.  It has a real existence with rights and liabilities as a separate legal entity.") (citations omitted).

However, the remainder of CardioVention's motion is denied.  The fact that

5

CardioVention's three main shareholders have a direct financial interest in the outcome of the case is relevant to their credibility as trial witnesses.  See, e.g., Crowe v. Bolduc, 334 F.3d 124, 132 (1st Cir. 2003) (stating that evidence that a trial witness has a financial incentive in the outcome of the trial is "classic evidence of bias, which is routinely permitted on cross-examination").  Additionally, any witnesses who testify under the "witness incentive program" are likewise subject to cross examination regarding their financial interest in the outcome of this litigation.

Although CardioVention's shareholders had no duty to invest additional funds in CardioVention to mitigate damages, their decision to not invest is relevant to causation and valuation.  For instance, Medtronic argues that the fact that the shareholders could have but did not invest in CardioVention in 2003 because, due to the Gremel patents, CardioVention could not block Medtronic from competing, shows that Medtronic's development of the Resting Heart did not cause damage to CardioVention.  Also, other potential investors may have been influenced to not invest in Round D on the grounds that CardioVention's own shareholders did not have enough confidence to invest additional money into CardioVention.  Medtronic also argues that if CardioVention's own shareholders refused to invest in CardioVention in 2003, despite their financial ability to do so, then CardioVention could not have really been worth hundreds of millions of

dollars in 2003.

Finally, evidence regarding CardioVention's shareholders' financial worth is relevant to whether they declined to invest in CardioVention despite a financial ability to do so or whether their decision was influence by their financial situation.

For these reasons, CardioVention's motion is denied.

**3.     Motion in Limine to Exclude Argument Suggesting That the Gremel Patents Permit Misappropriation [Docket No. 303]**

CardioVention requests that the Court bar argument that the Gremel patents give Medtronic the affirmative right to make and use the system disclosed in those patents.  CardioVention argues that Medtronic's ownership of the Gremel patents grants them the right to exclude others from making or using the patented invention but does not give Medtronic the affirmative right to make and use the system disclosed in the patents, particularly when that system contains trade secrets stolen from CardioVention.  CardioVention asserts that Medtronic's proposed jury instruction No. 29 falsely asserts that Medtronic owns a right to make, use, and improve the CPB system disclosed in the Gremel patent.

This issue is properly addressed during the jury instruction charge conference.  At that time, the parties can fully argue the law that should be given to the jury.  However, based on the parties' request for guidance during opening statements, the Court preliminarily grants CardioVention's motion until the jury

instruction charge conference.

The Court instructs the parties that a patent grants the patentee "the right to exclude others from making, using, offering for sale, or selling the invention." 35 U.S.C. § 154(a)(1). "A patent is not the grant of a right to make or use or sell. It does not, directly or indirectly, imply any such right. It grants only the right to exclude others." Atlas Powder Co. v. E.I. du Pont De Nemours & Co., 750 F.2d 1569, 1580 (Fed. Cir. 1984) (citation omitted).

As the Atlas court explained, if a plaintiff patented A+B+C and the defendant patents the improvement A+B+C+D, the defendant is liable to the plaintiff for any use or sale of the improvement because it infringes plaintiff's claim to A+B+C. Id. The parties are not permitted to argue that a patent grants the patent holder the affirmative right to use, develop, and manufacture the inventions contained in the patent. This ruling does not affect Medtronic's ability to offer the Gremel patents to attempt to show its knowledge of technology before it received CardioVention's trade secrets.

### 4.   Motion in Limine to Exclude Evidence or Argument About Unrelated Litigation [Docket No. 305]

CardioVention moves to exclude evidence of the lawsuit related to the death of Lawrence Zuercher. The parties dispute whether Zuercher's death, the Zuercher litigation, and the surrounding publicity adversely affected CardioVention's revenues and investors' decisions to invest in Round D.

8

CardioVention argues that evidence of the <u>Zuercher</u> litigation is irrelevant and highly prejudicial.  It further asserts that Datascope's failure to acquire CardioVention is not relevant to the claims remaining in this lawsuit because CardioVention does not claim damages stemming from the loss of acquisition by Datascope.  It argues that only Datascope's valuation of CardioVention is relevant to its damage claim - in order to determine CardioVention's fair market value.

CardioVention also argues that any of the evidence's probative value is substantially outweighed by the danger of unfair prejudice because evidence of a widow's allegation of the wrongful death of her husband is inflammatory.  It also claims that introduction of evidence of the <u>Zuercher</u> litigation will create a trial within a trial because CardioVention will have to respond with evidence explaining the litigation and its effect on CardioVention's business.

Medtronic asserts that the <u>Zuercher</u> litigation is relevant to show that Medtronic's alleged misappropriation of CardioVention's trade secrets did not cause CardioVention's damages - the <u>Zuercher</u> litigation did.  It argues that the litigation was a material factor in Datascope's decision not to purchase CardioVention.  Medtronic states that its damages expert will testify that patient death must be considered in assessing CardioVention's repeated inability to meet projections and to survive.  Medtronic also claims that the <u>Zuercher</u> evidence is relevant to show that Medtronic's 2001 projections about the potential success of

CORx are undermined by subsequent litigation.

The Court denies CardioVention's motion.  Evidence of the <u>Zuercher</u> litigation is highly relevant to the issue of damages causation.  Also, Datascope's decision not to buy CardioVention, which may have been partly motivated by the <u>Zuercher</u> litigation, is relevant if CardioVention plans to introduce evidence of Datascope's valuation of CardioVention because that valuation may have decreased after the <u>Zuercher</u> lawsuit.  This strong probative value is not outweighed by any danger of unfair prejudice.  There is no danger of a trial within a trial because evidence of the <u>Zuercher</u> litigation is not admissible to prove that the CORx is defective and caused Zuercher's death.  Rather, the evidence is only admissible to show how the <u>Zuercher</u> litigation affected the sales of CORx and investment in CardioVention.

### 5.   Motion in Limine to Exclude Evidence Withheld from Discovery [Docket No. 307]

During discovery, Medtronic instructed witnesses not to answer certain deposition questions that it claimed required disclosure of privileged information. CardioVention asserts that Medtronic is now attempting to offer evidence regarding the same subject matter at trial.  At oral argument, Medtronic represented that it will not offer evidence for which it previously claimed privilege.  Evidence for which it did not claim privilege, even if related to the same subject matter, is, of course, admissible, unless excluded under some other

Rule of Evidence.  Due Medtronic's representation, CardioVention's motion is denied as moot.

### C.   Defendant Medtronic's Motions

#### 1.   Motion in Limine No. 1: Excluding Any Evidence or Argument that Medtronic Stole or Copied the Venous Pull Circuit from Jorge Ojito [Docket No. 279]

Medtronic requests that the Court exclude testimony by CardioVention witness Jorge Ojito that Medtronic engineer Roger Elgas copied the Gremel invention from Ojito's Venous Pull Circuit.  Ojito admits that the Venous Pull Circuit was in the public domain and was neither CardioVention's confidential information nor its trade secret.

Medtronic asserts that this evidence is irrelevant because Elgas left Medtronic in 1999 and had no involvement with CardioVention's disclosures to Medtronic in 2001 or with Medtronic's development of the Resting Heart.  It argues that whether or not he copied information put into the public domain by Ojito does not make it more or less probable that a different group of Medtronic engineers later misappropriated CardioVention's confidential information.

CardioVention argues that Medtronic intends to introduce evidence regarding the Gremel patents to show that its product development was not based upon what it learned from CardioVention, but from its own Gremel patents. CardioVention claims that evidence that Elgas copied the Venous Pull Circuit

refutes Medtronic's argument that it had already researched and developed active air removal because it shows Medtronic's lack of development experience, demonstrating that it had to rely on CardioVention's trade secrets, not Elgas's work, to create the Resting Heart System.

The Court has dismissed all claims in which the validity of the Gremel patent was an element.  The issue of whether Medtronic copied the Gremel patents from Ojito is a side-issue that is minimally relevant to this case, particularly in light of the fact that CardioVention is not permitted to argue that the Gremel patents are invalid and that Ojito admits his work was in the public domain.  Furthermore, any probative value to the evidence is substantially outweighed by the danger of unfair prejudice from the jury viewing Medtronic as a repeat thief of inventions, of misleading the jury into believing that the validity of the Gremel patents is an issue in this case, and of waste of time because introduction of evidence related to Ojito will entail a mini-trial regarding whether Medtronic did, in fact, copy from Ojito.

> **2.      Motion in Limine No. 2: Excluding Any Evidence or Argument Related to CardioVention's Dismissed Claims [Docket No. 282]**

Medtronic moves to exclude evidence related to the validity of the Gremel patents because the Court has dismissed all such claims.  The evidence falls into three areas: 1) evidence that the Gremel patents are invalid, that Medtronic

offered or refused to offer CardioVention a covenant not to sue, or that Medtronic

threatened to enforce its patent rights against CardioVention; 2) evidence that

Medtronic committed inequitable conduct before the United States Patent and

Trademark Office ("USPTO"); or 3) argument that Medtronic should be held

liable because its Gremel patents interfered with CardioVention's efforts to obtain

financing or that Medtronic used its Gremel patents to destroy CardioVention's

business.

     The Court has already dismissed all claims related to the validity of the

Gremel patents.  The validity of those patents is no longer an issue in this case.

Any evidence or argument that Medtronic should be liable because its patents

interfered with CardioVention's attempts to raise financing or because Medtronic

threatened CardioVention with patent infringement would be a collateral attack

on the Court's summary judgment ruling.  Similarly, any evidence related to

CardioVention's claim that Medtronic acted inequitably before the USPTO is

prohibited.  In its April 24, 2006, Order, the Court rejected CardioVention's theory

that Medtronic's Gremel patents tortiously interfered with its attempt to raise

outside financing because the theory "amounts to an 'impermissible alternative

state law remedy for inequitable conduct before the PTO.'"  (Apr. 24, 2006 Order

at 17 (citation omitted).)

     The Court concludes that CardioVention's attempt to submit evidence of its

investigation and conclusion that the Gremel patents were invalid presents the strong danger of becoming a collateral attack on the Court's partial summary judgment ruling.  Furthermore, to the extent that this evidence may have some relevance to explain decisions by potential Round D investors, that slight probative value is substantially outweighed by the danger of confusion and misleading the jury.  This evidence would lead the jury into the side-issue of an analysis of the actual validity of the Gremel patents - an issue the Court has already determined that it is without jurisdiction to entertain.

The Court does hold that CardioVention may introduce evidence of Medtronic's alleged refusal to issue a transferable covenant not to sue to CardioVention because this evidence may have some relevance to investors' decisions to not invest in Round D and has little danger of unfair prejudice, confusion, or misleading the jury because it is consistent with the validity of the Gremel patents.

**3.      Motion in Limine No. 3: Excluding Any Evidence or Argument Related to the Resting Heart Patent Applications Filed in 2003 [Docket No. 285]**

Medtronic requests that the Court exclude any evidence or argument that suggests that the five Medtronic patent applications relating to it Resting Heart System contain CardioVention's confidential or trade secret information.  It claims this evidence has no probative value because it filed the Resting Heart provisional

applications after CardioVention's own patent applications were published in August 2002.  Thus, no CardioVention confidential or trade secret information existed by the time Medtronic filed its patent applications on the Resting Heart System.

CardioVention asserts that the Resting Heart patent files demonstrate the similarity between the Resting Heart System and the CORx.  It notes that evidence of Medtronic's access to CardioVention's trade secrets combined with evidence of the similarity between Medtronic's product and CardioVention's trade secrets can establish misappropriation of trade secrets.  See Leggett & Platt, Inc. v. Hickory Springs Mfg. Co., 285 F.3d 1353, 1361 (Fed. Cir. 2002) (noting that, under Illinois law, "access and similarity-may support a trade secret misappropriation claim").

CardioVention asserts that if Medtronic had started from a "blank slate," instead of copying CardioVention's trade secrets, the Resting Heart development would not have been completed until much later.  CardioVention argues that it is irrelevant that Medtronic applied for the Resting Heart patents after CardioVention's Stringer patent was published in August 2002, because although Medtronic could have used information that was publicly available in 2002, it actually began misappropriating CardioVention's trade secrets in 2001, before anything about the CORx was publicly disclosed.  See, e.g., Cherne Indus., Inc. v. Grounds & Assocs., Inc., 278 N.W.2d 81, 90 (Minn. 1979) (holding that, under

Minnesota law, claim for misappropriation was sufficient when, although

information was available from a public source, defendant may have relied on

confidential information earlier).

Evidence regarding the Resting Heart patents is admissible to show

damages to the extent that CardioVention argues that Medtronic's

misappropriation in 2001 gave it the head-start necessary to develop the Resting

Heart System as quickly as it did.  However, evidence that the USPTO initially

rejected some of the claims is excluded, as discussed below with regard to

Medtronic's Motion in Limine No. 7.

### 4. Motion in Limine No. 4: Excluding Any Evidence or Argument Concerning Medtronic's Listing CORx as a Predicate Device on the Resting Heart 510(k) Application to the FDA [Docket No. 288]

Medtronic requests that the Court exclude any evidence concerning its

listing CORx as a predicate device on the Resting Heart 510(k) application to the

FDA.  "510(k) notifications are submittals of engineering and clinical information

which are provided to the FDA to permit that agency to assess the safety and

effectiveness of a new product with regard to a predicate product which is already

on the market."  Sunrise Med. HHG, Inc. v. AirSep Corp., 95 F. Supp. 2d 348, 405

(W.D. Pa. 2000) (footnote omitted).  In the 510(k) context, substantial

equivalence means that the proposed device has the same intended use as the

predicate device and that it either has the same technological characteristics as

16

the predicate device or is as safe and effective as the predicate device.  21 C.F.R.
§ 807.100(b).

CardioVention asserts that Medtronic's 510(k) submission to the FDA is
relevant because it lists CardioVention's CORx as a "predicate device" and
characterizes it as "substantially equivalent" to the Resting Heart.  CardioVention
claims this admission is relevant to the degree of similarity between the Resting
Heart and CORx, which is probative with regard to its misappropriation claim.

Courts have repeatedly refused to allow FDA 510(k) notification of
substantial equivalence as admission of infringement in patent cases.  See, e.g.,
Sunrise Med. HHG, Inc., 95 F. Supp. 2d at 405-06; Univ. of Fla. Research
Foundation, Inc. v. Orthovita, Inc., No. 1:96-CARDIOVENTION-82-MMP, 1998 WL
34007129, at *23 n.23 (N.D. Fla. Apr. 20, 1998) (unpublished) ("[T]he Court
cannot use the FDA 510(k) notification in considering infringement by
equivalence, since in addition to comparing the commercial embodiment of the
'046 patentee's invention, instead of the patent claims, . . . the FDA filing is
controlled by a separate regulatory scheme.") (citation omitted).

Admission of the 510(k) evidence would be misleading and unfairly
prejudicial to Medtronic.  It would also cause undue delay and a waste of time
because the parties would litigate the meaning of the FDA regulatory system and
the difference between that and the standards for the claims before the jury.  The

parties would likely submit both expert and lay testimony on this issue, complicating the trial.

The Court grant Medtronic's motion.  The fact that Medtronic admitted that the CORx and the Resting Heart were substantially equivalent, as the term is defined in the FDA 510(k) context, is not the same as whether they are substantially equivalent in the trade secret context.  The 510(k) application has minimal relevance because the parties already agree that the CORx and the Resting Heart System have the same intended use, and so the 510(k) application merely asserts that the CORx and the Resting Heart System either share some of the same technological characteristics <u>or</u> that the Resting Heart is as safe and effective as the CORx.  This is not relevant to whether they are similar for purposes of the misappropriation claim.  Even if the notification is some slight evidence of similarity between the CORx and the Resting Heart, this relevance is substantially outweighed by the danger of confusion, of misleading the jury, of undue dely, and of waste of time.

**5.    Motion in Limine No. 5: Excluding Any Evidence or Argument Concerning Medtronic's Alleged Use of CardioVention's Public Marketing Slides [Docket No. 291]**

Medtronic admits that, in a May 2002 meeting, it presented slides that contained marketing materials from a PowerPoint CardioVention had previously given to Medtronic.  This occurred after CORx was first sold in the United States.

18

CardioVention claims that the slides were obtained directly from CardioVention in confidence in 2001, and Medtronic removed all references to CardioVention, added a Medtronic logo, and presented the slides to potential customers as its own.  CardioVention also claims that Medtronic used portions of CardioVention's PowerPoint presentations in 2001 to prepare a product to compete with CardioVention.  Medtronic asserts that evidence of its use of CardioVention's public marketing slides is irrelevant because those slides were not CardioVention's confidential information in May 2002.

Medtronic's alleged use of the slides in 2001 is relevant to CardioVention's misappropriation claim because CardioVention alleges that the information in the slides constituted trade secrets at that time.  Medtronic's alleged use of the slides in May 2002 is relevant because the fact that Medtronic copied CardioVention's PowerPoint is probative of the similarity between the Resting Heart and CORx, which is relevant to CardioVention's misappropriation claim.  Because this evidence is relevant, Medtronic's motion is denied.

6. **Motion in Limine No. 6: Excluding CardioVention from Claiming Information It Failed to Designate as Confidential Constituted Trade Secrets or Confidential Information  [Docket No. 294]**

a. **Background**

Medtronic requests that the Court exclude CardioVention from claiming that information it failed to designate under the CDA as confidential constituted a

trade secret or confidential information.  The CDA defined "Confidential

Information" to include only information that was reduced to writing and

stamped "confidential" or was so identified in writing within thirty days after

disclosure.  (CDA ¶ 2.)  Medtronic asserts that CardioVention did not properly

designate any 2001 information as confidential in writing, except for its business

plan.

### b.    Misappropriation Claim

Medtronic argues that a document that was not market "confidential" in

accordance with the CDA cannot form the basis for a breach of contract claim or a

misappropriation of trade secrets claim.

CardioVention counters that some courts have held that documents not

marked as confidential in accordance with the parties' agreement can still

constitute a trade secret if there is other evidence that the information had been

subject to reasonable measures to keep it confidential.  See, e.g., Diomed, Inc. v.

Vascular Solutions, Inc., 417 F. Supp. 2d 137, 145 (D. Mass. 2006) (holding that,

under Minnesota law, defendant's duty of confidentiality extended beyond scope

of parties' confidentiality agreement); Nw. Airlines v. Am. Airlines, 853 F. Supp.

1110, 1115-16 (D. Minn. 1994) (holding that documents not marked confidential

could still be trade secrets when other evidence demonstrated employees had

reason to know employer intended to keep that type of information confidential).

### c.      Breach of Contract Claim

CardioVention admits that it can succeed on its claim that Medtronic

breached the CDA only if CardioVention met its own obligations under the CDA.

Some courts have held that, under Minnesota law, the failure to follow the

procedure for designating a document as confidential under a non-disclosure

agreement defeats a claim for breach of that agreement.  Diomed, Inc. v. Vascular

Solutions, Inc., 417 F. Supp. 2d 137, 141 (D. Mass. 2006).  However,

CardioVention asserts that it signaled its intent to keep information confidential in

a manner other than stamping "confidential" on a document.

### d.      Conclusion

The question of whether CardioVention can succeed on a breach of contract

or misappropriation claim for the information that it gave to Medtronic under the

CDA but failed to designate as confidential is a dispositive motion, rather than a

motion in limine.  See Kimball v. RJ Reynolds Tobacco Co., No. C03-664JLR, 2006

WL 1148506, at *1-*2 (W.D. Wash. Apr. 26, 2006) (unpublished) (refusing to

decide motions in limine that were really veiled dispositive motions brought days

before trial).  For this reason, Medtronic's motion is denied.

> **7.      Motion in Limine No. 7:  Excluding Evidence that the
> United States Patent and Trademark Office Issued Interim
> Rejections of Certain Claims of Medtronic Patents
> Relating to the Resting Heart System Technology [Docket
> No. 334]**

In Medtronic's patent applications describing various features of the Resting Heart System, it cited known prior art, including CardioVention's allegations in this litigation.  The USPTO issued notice of allowances on four of the five applications.  As to the fifth application, its status is currently listed as "Allowed-Notice of Allowance Not Yet Mailed."  However, during the examination process, the Patent Examiner preliminarily rejected a least some of the claims as anticipated or obvious in light of the various prior art Medtronic cited.  Medtronic has filed continuation applications for four of the applications to pursue the claims that the Examiner preliminarily concluded were not available over prior art.  The USPTO has not yet issued any interim or final decisions on the continuation applications.

Medtronic moves for the Court to exclude any evidence or argument that the USPTO issued interim rejections of certain claims of Medtronic patents relating to the Resting Heart System technology or of communications with the USPTO concerning the claims.  It asserts that interim USPTO actions are irrelevant.  It claims that the Examiner's initial rejection of certain Medtronic patent claims as obvious or anticipated in light of published CardioVention patents or other prior art does not make it more or less probable that Medtronic used CardioVention's confidential information in formulating patent claims describing its technology.  It claims such rejections are a normal part of the patent

application process.

CardioVention argues that, in order to prove that Medtronic misappropriated its trade secrets, it will show the similarity between its trade secrets and Medtronic's product.  See Leggett & Platt, Inc. v. Hickory Springs Mfg. Co., 285 F.3d 1353, 1361 (Fed. Cir. 2002) (noting that, under Illinois law, "access and similarity-may support a trade secret misappropriation claim"). CardioVention asserts that the Examiner's determination that the similarities between what Medtronic claimed to have invented and what CardioVention invented were so great that Medtronic's claims were rejected is relevant to CardioVention's misappropriation claim.  CardioVention also claims that the related summary of interviews between the Examiner and Medtronic's representative supports CardioVention's contention that CORx and Resting Heart are more similar than they are dissimilar.

The Court concludes that this evidence is inadmissible under Federal Rule of Evidence 403.  Although the interim USPTO decision may be minimally relevant to similarity, that relevance is substantially outweighed by unfair prejudice, undue delay, and waste of time.  Evidence of interim USPTO actions are unduly prejudicial because 1) the jury may think that Medtronic acted improperly in trying to obtain broad patent protection; Kingsdown Med. Consultants, Ltd. v. Hollister Inc., 863 F.2d 867, 874 (Fed. Cir. 1988) (noting that

"there is nothing improper, illegal or inequitable in filing a patent application for the purpose of obtaining a right to exclude a known competitor's product from the market"); 2) the jury may mistakenly believe that a government agency has determined that the claims in the applications are based on CardioVention's confidential information; Everest Capital Ltd. v. Everest Funds Mgmt., L.L.C., 393 F.3d 755, 764 (8th Cir. 2005) (holding that trial court did not abuse discretion in excluding tentative Trademark Office notice because it was a "tentative opinion" and "the agency opinion had the potential to unfairly prejudice the defendants if the jury mistakenly viewed it as an official government position on the critical confusion issue that the jury had to decide"); and 3) admission of non-final USPTO proceedings will waste time and distract from the key issues in the lawsuit. 3M Innovative Props. Co. v. Dupont Dow Elastomers LLC, No. 03-3364 MJD/AJB, 2005 WL 2216317, at *2 (D. Minn. Sept. 8, 2005) (unpublished) (granting stay of patent infringement case pending completion of reexamination proceeding, in part, because "admission of evidence of an incomplete reexamination would have low probative value, would distract from the core issues in the case, and would be highly prejudicial") (citations omitted).

Furthermore, admission of this minimally probative evidence would result in undue delay and a waste of time because the parties would spend significant time addressing the USPTO process, frequency of initial claim rejections, and the

24

difference between the claims that were rejected, those that were allowed, and

the prior art.  Therefore, Medtronic's motion is granted.

### 8. Motion in Limine No. 8: Excluding Evidence Related to the Performer CPB [Docket No. 347]

Medtronic moves to exclude CardioVention from introducing evidence or

argument regarding Medtronic's Performer CPB, a new part of the Resting Heart

System, introduced in 2006.  It argues that CardioVention has never asserted any

claims related to the Performer CPB or indicated that the Performer CPB is

relevant to this lawsuit.  Also, CardioVention did not identify the Performer CPB

in its Complaint, in responses to Medtronic's discovery requests, in its trade secret

allegations, or in its expert reports.

CardioVention claims that the Performer CPB is the latest rendition of the

Resting Heart System.  It asserts that the Performer CPB is relevant because it

demonstrates the manner in which Medtronic is currently using the information

that it misappropriated from CardioVention and is part of the overall story of

misappropriation.  Also, CardioVention accuses Medtronic of failing to mention

the Performer CPB in response to discovery requests.

The Court grants Medtronic's motion to exclude evidence of the Performer

CPB because this evidence too attenuated from CardioVention's allegations of

misappropriation occurring in 2001 to be relevant to CardioVention's remaining

claims.  Additionally, any probative value is substantially outweighed by concerns

of waste of time and undue delay. Allowance of this evidence would create an

new mini-trial involving a product that was not previously mentioned in this case.

Finally, CardioVention has not previously disclosed its intent to use this evidence.

### 9.    Motion in Limine No. 9: Motion to Exclude Trade Secrets Not Identified by CardioVention  [Docket No. 354]

A party alleging a misappropriation cause of action must first prove the

existence of a trade secret. Electro-Craft Corp. v. Controlled Motion, Inc., 332

N.W.2d 890, 897 (Minn. 1983). In order to successfully seek protection of a trade

secret, a plaintiff must identify the trade secret with sufficient specificity so that

appropriate relief may be granted. Porous Media Corp. v. Midland Brake, Inc.,

187 F.R.D. 598, 600 (D. Minn. 1999) ("Failure to identify the trade secrets with

sufficient specificity renders the Court powerless to enforce any trade secret

claim.") (citations omitted).

In order to proceed with trial and in order for the Court to be able to

correctly instruct the jury, CardioVention must specify precisely what items of

information constitute the trade secrets that Medtronic allegedly misappropriated.

Thus, the Court orders CardioVention to submit a specific, clear, detailed, and

precise list of the trade secrets at issue in this case.

### 10.    Motion in Limine No. 10: Motion Regarding Expert Witnesses [Docket No. 358]

#### a.    Standard

26

The admissibility of expert testimony is governed by Federal Rule of

Evidence 702.  The proponent of the testimony has the burden to show by a

preponderance of the evidence that the testimony is admissible under Rule 702.

Lauzon v. Senco Prods., Inc., 270 F.3d 681, 686 (8th Cir. 2001).  Under the Rule:

> If scientific, technical, or other specialized knowledge will assist the
> trier of fact to understand the evidence or to determine a fact in
> issue, a witness qualified as an expert by knowledge, skill, experience,
> training, or education, may testify thereto in the form of an opinion
> or otherwise, if (1) the testimony is based upon sufficient facts or
> data, (2) the testimony is the product of reliable principles and
> methods, and (3) the witness has applied the principles and methods
> reliably to the facts of the case.

Fed. R. Evid. 702.

"Under the framework developed in Daubert, trial courts must serve as

gatekeepers to insure that proffered expert testimony is both relevant and reliable.

Trial courts are given broad discretion in fulfilling this gatekeeping role . . . ."

Wagner v. Hesston Corp., 450 F.3d 756, 758 (8th Cir. 2006) (citations omitted).

The proposed testimony must be useful to the factfinder; the expert witness must

be qualified; and the proposed evidence must be reliable.  Lauzon, 270 F.3d at

686.

> As a general rule, the factual basis of an expert opinion goes to
> the credibility of the testimony, not the admissibility, and it is up to
> the opposing party to examine the factual basis for the opinion in
> cross-examination.  Only if the expert's opinion is so fundamentally
> unsupported that it can offer no assistance to the jury must such
> testimony be excluded.

27

Bonner v. ISP Techs., Inc., 259 F.3d 924, 929-30 (8th Cir. 2001) (citation omitted).

In this motion, Medtronic challenges three of CardioVention's damages experts: Donald A. Gorowsky, Richard M. Ferrari, and John L. Heath.

### b.    Donald A. Gorowsky

### i.    Introduction

Donald A. Gorowsky is a Certified Public Accountant and licensed attorney, who has submitted two expert reports analyzing CardioVention's damages under the misappropriation of trade secrets claim and the breach of contract claim.

In the First Gorowsky Report, dated July 14, 2005, Gorowsky states that Medtronic had not yet produced the data needed to determine damages.  In the Second Gorowsky Report, dated May 15, 2006, Gorowsky sets forth three opinions: A, B, and C.  In Opinion A, Gorowsky estimates that Medtronic has been unjustly enriched by reduced research and development ("R&D") spending of $462,000 to $852,000 as a result of its misuse of CardioVention's trade secrets.  In Opinion B, Gorowsky opines that Medtronic has been unjustly enriched by $48 million to $127 million from higher perfusion product revenues and related profits as a result of its misuse of CardioVention's trade secrets.  Opinion C states that CardioVention suffered loss of business value damages ranging from a low of $25 to $32 million, to a high of $75 to $115 million.

## ii.     Whether Gorowsky's Proposed Testimony Is Legally Inadmissible

Medtronic argues that Opinions B and C must be excluded because they are "contrary to law."  As to Opinion B, Medtronic argues that the appropriate measure of unjust enrichment damages in a trade secret misappropriation case is the profits generated by the defendant's sale of products incorporating the misappropriated trade secret.  Medtronic argues that although the First Gorowsky Report uses this model, the Second Gorowsky Report employs a theory that quantifies damages based on sales of Medtronic's existing perfusion line of products, which do not incorporate any of CardioVention's alleged trade secrets. Opinion B is based on the assumption that Medtronic generated "excess profits" from not having to compete with CardioVention.

As to Opinion C, Medtronic argues that there is no precedent for allowing a plaintiff in a trade secret misappropriation case to recover unjust enrichment damages constituting the entire business value of a company.

The Court concludes that Gorowsky's Opinion B is legally sufficient.  The Minnesota Uniform Trade Secrets Act provides that damages for misappropriation of a trade secret "can include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss."  Minn. Stat. § 325C.03(a).  Although unjust enrichment is typically measured by profits gained from the sale of the product containing the

29

trade secret, courts have considered cost savings and increased productivity

resulting from use of the trade secret.  See, e.g., Bourns, Inc. v. Raychem Corp.,

331 F.3d 704, 709-10 (9th Cir. 2003) (holding that award of unjust enrichment

damages can be based on development cost savings); Children's Broad. Corp. v.

Walt Disney Co., No. Civ. 3-96-907, 2002 WL 1858759, at *3 (D. Minn. Aug. 12,

2002) (upholding verdict when jury approximated the value of the removal of

competitive uncertainty and risk as part of its damages calculation for trade secret

misappropriation).

The Court holds that Opinion C is legally sufficient.  Courts have recognized

that a plaintiff's actual damages can be measured by the value of the loss of the

secret to the plaintiff under the circumstances.  See, e.g., Precision Plating &

Metal Finishing, Inc. v. Martin-Marietta Corp., 435 F.2d 1262, 1263-64 (5th Cir.

1970) (upholding calculation of damages according to investment value of

misappropriated trade secret, where defendant's actions caused complete

destruction of the trade secret); Basic Chems., Inc. v. Benson, 251 N.W.2d 220,

233 (Iowa 1977) (holding that proper measure of plaintiff's damages due to

misappropriation of trade secrets, as well as from other acts of unfair competition,

included reference to the value of the plaintiff's business).

### iii.    Whether Gorowsky's Testimony Should Be Excluded as Factually Inadmissible

Medtronic argues that Opinions B and C are also factually infirm because

30

CardioVention changed its position from asserting that it lost financing because of Medtronic's patents, to asserting that investors abandoned it because of Medtronic's alleged misappropriation of trade secrets.  Medtronic also objects to CardioVention's assertion that if it had obtained financing it would have produced a product that would have competed not only with Resting Heart, but with Medtronic's entire cardiac perfusion line.  This conclusion is too speculative, Medtronic argues, and is based on a product that had no track record of sales, faced significant market resistance, and is contradicted by the record of actual sales of Resting Heart.

The Court concludes that Gorowsky's testimony should not be excluded due to these alleged factual flaws.  Medtronic's attacks on the foundation of Gorowsky's opinion go to the weight, not the admissibility, of his testimony. Sphere Drake Ins. PLC v. Trisko, 226 F.3d 951, 955 (8th Cir. 2000).  "[I]t is up to the opposing party to examine the factual basis for the opinion in cross-examination."  Larson v. Kempker, 414 F.3d 936, 941 (8th Cir. 2005) (citation omitted).  The expert's testimony must be excluded "only if an expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury."  Id. (citation omitted).

**iv.**   **Whether the Testimony Should Be Excluded as Untimely**

Medtronic argues that Models B and C were not disclosed during the period

for production of expert reports, which were due July 15, 2005, pursuant to Court order.  Thus, according to Medtronic, the Second Report is ten months late. Medtronic argues that it will be prejudiced by the inclusion of this testimony because it cannot pursue discovery to show that misappropriation did not cause CardioVention's losses.

The parties stipulated that Gorowsky could produce a supplemental report after receiving certain discovery from Medtronic.  Gorowsky could not the know what damages theories would be pursued without knowing how Medtronic was unjustly enriched.  Gorowsky's First Report explains that he is waiting for documents to calculate the damages to CardioVention caused by Medtronic's misappropriation of trade secrets.  His Second Report is not untimely.

The Court denies Medtronic's motion to exclude Gorowsky's testimony. However, to the extent that his opinion is based on the excluded testimony of Richard Ferrari, that portion of Gorowsky's opinion is excluded.

### c.    Richard M. Ferrari

Ferrari was a CEO and entrepreneur for 20 years before entering the venture capital industry.  He is a co-founder of De Novo Ventures, a venture capital firm specializing in medical and bio-tech start-ups.

Ferrari would provide an opinion of CardioVention's value if it had succeeded with the Series D financing and of the effect of an adverse intellectual

property review during the course of due diligence for purposes of securing Series

D financing.  Ferrari's report states: "Specifically, I have been asked to opine

regarding CardioVention's ability to obtain venture capital funding following the

discovery of CardioVention's potential infringement of patents owned by a

competitor in the same industry during Series D financing."

The Court excludes Ferrari's testimony because it is based on claims and

theories of recovery that have been dismissed by the Court.  His opinion is not

relevant to the claims remaining for trial.

### d.     John L. Heath

Heath considers various valuation methods to estimate the fair market

value of CardioVention.  Although his opinion was also provided in conjunction

with claims that no longer remain in this case, the Court concludes that his

valuation opinion does have relevance apart from his conclusions regarding the

patent claims.

Medtronic also argues that Health's testimony should be excluded because

he has an undisclosed financial interest in the outcome of the litigation.  Health's

interest in the Brenner Group and the possibility of a "success fee" go to the

weight to be given his opinion, not to the admissibility of his opinion.  See, e.g.,

Ethicon, Inc. v. U.S. Surgical Corp., 135 F.3d 1456, 1465 (Fed. Cir. 1998) ("[A}

witness's pecuniary interest in the outcome of a case goes to the probative weight

of testimony, not its admissibility.") (citation omitted).  The Court denies

Medtronic's motion to exclude Heath's testimony.


## IV.    CONCLUSION

For the foregoing reasons, the Court issued its Order dated March 16, 2007

[Docket No. 392].


Dated: March 20, 2007                    s / Michael J. Davis
                                         Judge Michael J. Davis
                                         United States District Court